UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **CHARLES PHELPS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CAUSE NO.  3:04-CV-006 AS |
| v. | ) |
| | ) |
| **SGT. TUCKER,** *et al.* | ) |
| | ) |
| **Defendants.** | ) |

*OPINION AND ORDER*

This case is before the court on cross motions for summary judgment. When these motions were last addressed, unbeknownst to the court, the briefing had not yet been completed. Furthermore, the record, such as it was at the time, was not fully present and not entirely available. These problems have been resolved and the court now has the fully briefed motions before it and has reviewed the entire record and applicable law and cases.

Charles Phelps, a *pro se* prisoner, filed this suit under 42 U.S.C. § 1983. Mr. Phelps filed several amended complaints and was ultimately granted leave to proceed on three claims.

> [1] . . . against Patrick McCoy, T. Waddle, and Mr. Cooper on his Fourteenth Amendment Due Process claims in Counts 1, 2, and 3 of the complaint for denying him the opportunity to present evidence in MCF 03-11-0041 on November 12, 2003;
> [2] . . . against Donald Matthews and Officer Greve on his Fourteenth Amendment Due Process claims in Counts 4 and 5 of the complaint for denying him the opportunity to present evidence in MCF 03-11-0040 on December 8, 2003; [and]
> [3]against Patrick McCoy, T. Waddle, Mr. Cooper, Donald Matthews, and Officer Greve on his Fourteenth Amendment Due

> Process claims in Count 7 of the complaint for destroying evidence with the intent to prevent him from introducing it in his defense;

Screening order of June 30, 2004 (docket # 39).

The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *See Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986).

The facts involved here relate to two incident reports, two hearings, and two rehearings. Nevertheless, this case only involves two incident reports, one hearing and one rehearing. MCF 03-11-0040 (hereinafter "Incident #40") is the first incident report and MCF 03-11-0041 (hereinafter "Incident #41") is the second incident report. The questions in this case involve only the rehearing of Incident #40 and the hearing of Incident #41. Though it is unclear why Mr. Phelps did not also allege due process errors related to the hearing of Incident #40 and the rehearing of Incident #41, a review of his amended complaint verifies that he did not. Nevertheless, these incidents, their hearings, and rehearings parallel each

2

other to such an extent that even if these claims had been presented, the outcome would remain the same.

The most logical sequence for addressing Mr. Phelps claims is in reverse order, therefore the court now turns to his allegation that the defendants destroyed the videotape with the intent to prevent him from introducing it into evidence in his defense. The defendants assert in their summary judgment motion that it is an undisputed fact that the recording on the tape was destroyed when it was recorded over in the normal course of business. In support of this they have provided the declaration of each of the defendants who assert that they did not destroy the videotape. They also provide the declaration of Michael Haynes who declares that the tapes made on October 31, 2003 would have been recycled on November 30, 2003 unless they were requested as evidence by a Conduct Adjustment Board or an Internal Affairs Officer. Even though Mr. Phelps declares in his declarations that he requested the videotape, he has not submitted any evidence that the videotape was requested as evidence by a Conduct Adjustment Board or an Internal Affairs Officer. Indeed, it is an undisputed fact that none of his Conduct Adjustment Boards reviewed the videotape. Neither has he presented any evidence that any of the defendants destroyed the videotape. Therefore summary judgment must be granted on this claim in favor of the defendants and against Mr. Phelps.

Turning now to his second claim, Mr. Phelps alleges that Donald Matthews and Officer Greve denied him the opportunity to present the aforementioned

videotape in his defense during the rehearing of Incident #40 on December 8, 2003. As previously discussed, the tape had been destroyed/recycled/taped over in the normal course of business on November 30, 2003. Because the videotape did not exist at the time of his hearing, it was not improper to have refused to admit it as evidence. Indeed, it would have been impossible to do so. Therefore summary judgment must be granted on this claim in favor of the defendants and against Mr. Phelps.

Mr. Phelps first claim is that Patrick McCoy, T. Waddle, and Mr. Cooper denied him the opportunity to present the aforementioned videotape in his defense during the hearing of Indicent # 41 on November 12, 2003.

> Indiana prisoners possess a liberty interest in good-time credits, and Indiana therefore must afford due process before reducing a prisoner's credit-earning class. The Supreme Court has held that procedural due process requires, among other safeguards, that a prisoner facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. *Wolff* [*v. McDonnell*, 418 U.S. 539, 566 (1974)] does not, however, guarantee prisoners the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity. But the CAB may not arbitrarily refuse to consider exculpatory evidence simply because other evidence in the record suggests guilt. And prisoners are entitled to have exculpatory evidence disclosed unless its disclosure would unduly threaten institutional concerns.

*Piggie v. McBride*, 277 F.3d 922, 924-925 (7th Cir. 2002) (quotation marks and citations omitted). The defendants do not argue that institutional safety would have been implicated had they reviewed the videotape.

4

It is undisputed that Mr. Phelps requested and was denied the use of the videotape in his defense at his hearing. The defendants argue that they did not review the videotape because it was "determined that the requested evidence would not be exculpatory to Plainitiff's defense." Motion at 2, docket # 66. Patrick McCoy declared:

> 10. I denied Phelps use of the videotape in his defense because it would not show anything relevant to Phelps' defense.
> 11. I did not view the requested videotape.
> 12. I did not believe the videotape would show anything relevant to Phelps' defense because the security surveillance videotapes do not record images inside offender cells and do not record clear images that would allow me to ascertan the identity of an individual that would enter a cell.

Declaration of Patrick McCoy at 2, docket # 67.

The refusal to review the videotape was arbitrary because the tape was relevant and potentially exculpatory even if it did not show images inside the cell and even if the images were not clear enough to determine the specific identity of an individual. Mr. Phelps declared:

> 5. The defendants was provided a Statement by Gregory Brown, stating he throw the rolled up pieces of toilet paper in my trash.
> 6. Gregory Brown was the offender that got stripped searched moments before the officer found the alleged items, in Charles Phelps cell area.

Declaration of Charles Phelps at 1, docket # 76. Attached to the declaration is Gregory Brown's statement.[1]

---

[1] Gregory Brown's statement is not a declaration and therefore it is utilized solely to indicate what Mr. Phelps presented to the defendants and not as proof of the facts which it asserts.

5

> I am the recycle guy on P-3/4, my job is to do trash and general cleanup. Prior to the incident where offender Phelps was written up, I was cleaning up the dorm, I saw some toilet paper, a couple of pieces rolled up. I picked them up without knowing their contents and just threw in the trash can in room 301-302. The reason was that it was the closest can in the area I was cleaning up.

Statement of Gregory Brown at 1, docket # 77. Given the basis for Mr. Phelps defense, the videotape would have either corroborated or undermined his assertion that an inmate doing cleaning work in close proximity to his cell picked up something from the floor and entered his cell sometime before he was taken back into that cell by one or more guards who would ultimately strip search him there. Such video evidence would be relevant to Mr. Phelps' defense. Though Patrick McCoy declared that the video image was poor, it exceeds credibility that the video images are so poor that it would be impossible to glean the basic information described above. Indeed, if the video quality were known to routinely be that poor, there would be no point in making videotapes at all.

In their response to Mr. Phelps' motion for summary judgment, the defendants argue "that any due process error created by the refusal to allow Plaintiff to present the security videotape as evidence was erased when Superintendent John VanNatta reversed Plaintiff's disciplinary sanctions . . . ." Response Brief at 2, docket # 65. Though perhaps intuitive, this argument is legally backwards. Mr. Phelps did not have a cause of action until the sanction was reversed. *See Edwards v. Balisok*, 520 U.S. 641 (1997) (Applying to prison disciplinary proceedings the *Heck* doctrine that a civil rights cause of action which

6

would call into question or otherwise undermine a conviction does not arise until the conviction is reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.) Because of *Edwards*, the reversal of Mr. Phelps disciplinary sanction permitted him to proceed with his cause of action for a due process error.

The defendants argue that because of the reversal of the disciplinary sanction, Mr. Phelps did not suffer an extension of the duration of his confinement and therefore was not entitled to due process. In this case, Mr. Phelps lost 90 days good time which was restored following his successful appeal. While it is true that *Sandin v. Conner*, 515 U.S. 472, 485 (1995) does not require due process before the imposition of punishment which does not extend the duration of confinement; here, the disciplinary hearing did extend the duration of his confinement and he was therefore Constitutionally entitled to the limited due process requirements of *Wolff* including the right to present relevant evidence. Though he was able to appeal, and was ultimately successful, the due process rights of *Wolff* do not include the right to an appeal.

Next the defendants argue that the videotape did not contain exculpatory evidence, as previously discussed, the tape might have contained evidence corroborating other evidence presented. Though Mr. Phelps argues that the cameras are located closer and therefore the tape recordings of better quality than

7

the defendants claim, and that it certainly would therefore have contained images which would have exonerated him, it is unnecessary to resolve these disputed facts because they are not material. Even accepting that the videotape suffered from the limitations claimed by the defendants, it still would have made a meaningful contribution to the disciplinary hearing and due process required that Mr. Phelps be permitted to present it into evidence and have it reviewed. Additionally, even if the videotape inculpated him, the Board's refusal to allow him to present relevant evidence would nevertheless have created liability for a due process violation. *See Akbar v. Fairman*, 788 F.2d 1273, 1277-78 (1986).

Finally, the defendants argue that Mr. Phelps has not presented admissible evidence. Mr. Phelps has presented a declaration, under penalty of perjury, pursuant to 28 U.S.C. § 1746. His declaration is as admissible as the declarations of the defendants and their witnesses which are also submitted under penalty of perjury, pursuant to 28 U.S.C. § 1746. Therefore summary judgment must be granted on this claim in favor of Mr. Phelps and against Patrick McCoy, T. Waddle, and Mr. Cooper on the claim that they denied him due process by refusing to allow the admission of the videotape during the hearing of Incident #41 on November 12, 2003.

Having granted summary judgment for the plaintiff, the question of damages remains to be resolved either by settlement or at trial.

For the forgoing reasons, the court:

(1) **GRANTS IN PART** the defendants' motion for summary judgment (docket # 66) and **DENIES IN PART** the plaintiff's motion for summary judgment (docket # 60) as to the plaintiff's claims that the defendants destroyed the videotape with the intent to prevent him from introducing it into evidence in his defense and that Donald Matthews and Officer Greve denied him the opportunity to present the aforementioned videotape in his defense during the rehearing of MCF 03-11-0040 on December 8, 2003;

(2) **DISMISSES** Donald Matthews and Officer Greve; and

(3) **DENIES IN PART** the defendants' motion for summary judgment (docket # 66) and **GRANTS IN PART** the plaintiff's motion for summary judgment (docket # 60) as to the plaintiff's claim that Patrick McCoy, T. Waddle, and Mr. Cooper denied him the opportunity to present the aforementioned videotape in his defense during the hearing of MCF 03-11-0041 on November 12, 2003.

 **SO ORDERED.**

 **ENTERED: May 26, 2005**

                <u>s/ ALLEN SHARP</u>
                **ALLEN SHARP, JUDGE**
                **UNITED STATES DISTRICT COURT**